**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

CHICAGO TITLE
INSURANCE CORPORATION,

       Plaintiff,                        Case No. 2:03-cv-368
                                          **JUDGE GREGORY L. FROST**
   v.                                   **Magistrate Judge Mark R. Abel**

JAMES A. MAGNUSON, et al.,

       Defendants.

### OPINION AND ORDER

This matter is before the Court for consideration of the following sets of filings:

(1) Defendant First American's Motion to Allow Additional Discovery (Doc. # 264), Plaintiff's memorandum in opposition (Doc. # 268), and Defendant's reply memorandum (Doc. # 273);

(2) Plaintiff Chicago Title Insurance Company's Motion to Limit the Scope of Discovery on Remand (Doc. # 267), Defendant's memorandum in opposition (Doc. # 270), and Plaintiff's reply memorandum (Doc. # 274);

(3) Plaintiff Chicago Title Insurance Company's Motion for Partial Summary Judgment regarding First American Title Insurance Company's Mitigation of Damages Defense (Doc. # 265) and its memorandum in support (Doc. # 266), Defendant's memorandum in opposition (Doc. # 271), and Plaintiff's reply memorandum (Doc. # 275).

For the reasons that follow, this Court **GRANTS** Defendant First American's Motion to Allow Additional Discovery (Doc. # 264), **GRANTS IN PART** and **DENIES IN PART**

Plaintiff Chicago Title Insurance Company's Motion to Limit the Scope of Discovery on Remand (Doc. # 267), and **DENIES** Plaintiff Chicago Title Insurance Company's Motion for Partial Summary Judgment regarding First American Title Insurance Company's Mitigation of Damages Defense (Doc. # 265).

## I. Discovery

The parties' competing motions and related briefing address the scope of what discovery this Court should permit upon remand from the Sixth Circuit. That appellate court previously affirmed in part, reversed in part, and remanded this litigation for a new trial on compensatory damages. *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985 (6th Cir. 2007). The parties are now arguing over the scope of that remand and what discovery is necessary to meet the court of appeals' directive. Having considered the scope of the remand, fairness to the parties, and the desire to adjudicate this dispute on the merits, this Court has reached the following conclusions regarding each category of discovery at issue.

**Financial information/experts.** The parties agree that discovery of post-2003 financial data is appropriate in light of the Sixth Circuit's remand. Defendant argues that additional discovery is warranted, however, such as revised 2003 financial data. Plaintiff counters that the Court should limit discovery on remand to only that narrow category of relevant discovery that was not available prior to the discovery deadline that preceded the first trial.

No basis exists in the remand or in equity to force any party to proceed with less-than complete information on the financial issues involved in this litigation without providing each party with the opportunity to discover and address the facts. The remand enables an adjudication that can now avoid many projections because time has of course passed since the original trial.

There is the possibility that the 2003 financial data used during the original trial was incomplete. There is also a potential utility to be had from discovery of 2002 financial data, which, for example, could enable useful comparison with data from those subsequent years that fall within the damages period. All or some of this financial information could result in a new expert opinion or opinions on damages or could inform the examination of the experts' existing damages opinions. At the least, the new financial data could provide fodder for cross-examination even if Plaintiff elects to proceed with Nesser's original opinion and not incorporate any new financial data–as well as support for Nesser's original opinions.

The Court will therefore permit discovery of relevant financial information related to the issue of compensatory damages, including but not limited to relevant financial statement of parties and non-parties, dating from 2003 through 2007. The parties may also conduct discovery related to those years subsequent to 2007 if Plaintiff asserts that its purported damages somehow extend beyond 2007. Additionally, to the extent that such information has not already been fully and accurately disclosed, discovery of 2002 financial data is permissible, although no party should demand discovery on that which has already been disclosed. The Court also permits discovery related to the opinion of experts such as Nesser, especially in regard to the valuation of the Magnuson book of business, in light of new or additional financial information.

**Non-compete covenant.** On appeal, the Sixth Circuit upheld this Court's determination that the Magnuson non-compete covenant was enforceable for two years. *Chicago Title Ins. Corp.*, 487 F.3d at 992-93. The court of appeals concluded, however, that it was unable to determine based on the record before it whether a five-year duration was appropriate. *Id.* at 998. The Sixth Circuit therefore affirmed this Court's ruling on the two-year duration, but reversed

for a new trial based its inability to answer whether an additional three years of enforceability was reasonable. *Id.*

Plaintiff seeks to foreclose discovery related to the enforceable duration of the Magnuson non-compete agreement and posits that this Court can simply file a written decision memorializing the factual findings and analysis underlying its prior decision. It is Defendant that suggests that Plaintiff is entitled to a second chance at justifying the additional three-year prohibition on competition. Recognizing that the scope of the Sixth Circuit's opinion, Defendant therefore argues that additional discovery is warranted regarding whether the Magnuson non-compete covenant is enforceable for more than the two years no longer in dispute.

The Sixth Circuit's opinion states that "[w]ithout any further factual development in the district court record as to the reasonableness of the Covenant for a period of five years . . . we are unable to perform the requisite review under [*Raimonde v. Van Vlerah*, 42 Ohio St. 2d 21, 325 N.E.2d 544 (1975)], for this longer period of time." *Chicago Title Ins. Corp.*, 487 F.3d at 998. This statement is ambiguous as to whether the panel sought on remand additional "factual development" consisting of (1) new discovery *developing "new" facts*, new arguments, and a resulting written decision or (2) simply a written decision "developing" the facts based only on the evidence before this Court at the time the Court previously decided the duration issue.[1]

---

[1] This Court notes that simply issuing a new written decision may not satisfy the court of appeals. The Sixth Circuit stated in its opinion that this Court "failed to incorporate its findings of fact on the [duration of the non-compete covenant] issue in any written opinion." *Chicago Title Ins. Corp.*, 487 F.3d at 998. Such a statement ignores this Court's September 26, 2005 Opinion and Order, in which this Court devoted seven pages to explaining how Plaintiff had satisfied the *Raimonde* factors to support the conclusion that "the non-competition agreement extends until December 31, 2006." (Doc. # 225, at 34.)

This Court recognizes that Plaintiff has argued that the issue of the non-compete covenant's durational limit is essentially moot, despite the court of appeals' opinion, because there is no allegation that Magnuson breached the agreement after the two-year period that is not in dispute. What this argument asks the Court to do is to construe the ambiguous mandate in light of a party's theory of the case; Plaintiff in effect argues that the court of appeals' reasoning is flawed and that, consequently, this lower court should interpret the remand in accordance with the practical realities of this litigation.

The appellate decision undercuts Plaintiff's suggestion. Notably, the Sixth Circuit stated that "Chicago Title's testimony did not provide justification for a specific time period" for the covenant's duration. *Id.* at 993. The court of appeals also stated that "we express no decision one way or another as to the Covenant's validity for the full five-year period as written." *Id.* at 998. Both statements are critical language, because they point to the appellate panel having concluded that *the evidence in the record*, regardless of whether this Court journalized what evidence supported its finding of a five-year duration, was in fact insufficient to justify a five-year duration. Despite its earlier statement indicating a lack of justification, the appellate panel later expressly disavowed engaging in a *Raimonde* analysis, concluding that it could in fact not even perform an analysis under *Raimonde* without further factual development. *Id.* at 998. The only conclusion that reconciles the various panel statements is that the court of appeals looked at the *record* evidence and found it wanting under a *Raimonde* analysis while recognizing that facts not in the record might enable a fuller *Raimonde* analysis. Given these statements, as well as the appellate court's identification and characterization of the relevant non-compete covenant, this Court in its discretion concludes that the best approach is to enable the parties to develop full,

5

on-point arguments based on complete discovery and the opportunity to present the relevant substantive law connected to the complete facts. Construing the appellate directive in its broadest and most even-handed sense, the Court therefore holds that additional discovery is appropriate targeting evidence related to whether the Magnuson employment-related non-compete covenant is enforceable beyond the two-year period.

**Causation.** Because liability is a settled issue in this case, no further discovery in regard to liability is necessary. Plaintiff asserts that causation is also a settled issue, foreclosing any additional discovery in that regard, based in large part of a law of the case argument. Defendants correctly point out in their briefing that this Court's prior jury instructions recognized that although liability was indeed a settled issue, causation nonetheless remained at issue in the first trial. Nothing has persuaded this Court that its previous understanding was incorrect. Moreover, events subsequent to trial in the parties' market invariably informs their respective arguments over damages, and it would be unjust, if not illogical and inherently unworkable in a practical sense, to conclude that a new jury could assess accurate damages in a vacuum without deciding whether the wrongdoing involved in this litigation caused those specific damages. Plaintiff's contention that the new jury could determine damages based on the prior jury's assessment of probable cause presents a situation that essentially risks negating causation and prevents attribution of losses to events that had not even occurred at the time of the first trial, both of which would be unjust results. Accordingly, logic dictates that the remand for a new trial on compensatory damages inherently includes consideration of causation. The Court will therefore permit discovery targeting evidence related to proximate cause issues.

**Mitigation/lost volume seller.** Defendant argues that additional discovery is necessary

regarding the issues of mitigation and whether Plaintiff was a lost volume seller. The company posits that new or additional facts not known at the time of the first trial invariably can inform both intertwined issues. In some briefing, Plaintiff disagrees and characterizes additional discovery as affording Defendant "a second bite at the discovery apple" that would constitute a "fishing expedition." (Doc. # 268, at 6.) In other briefing, Plaintiff does not object to the following limited mitigation discovery: "mitigation-related discovery for the period of time that 'extended beyond the date of the original trial' and regarding only information that 'could not have been discovered by First American before the original trial.' " (Doc. # 268, at 15.)

In its decision, the Sixth Circuit recognized "the propriety of allowing pre-breach evidence in making the determination of whether a party is a lost volume seller." *Chicago Title Ins. Corp.*, 487 F.3d at 997. Thus, the court of appeals concluded, "evidence of the seller's business practices within a year of the breach is relevant [and admissible]." *Id.* The Sixth Circuit explained that Defendants "should also be able to present evidence of Chicago Title's post-breach conduct relative to obtaining new business . . . so long as the evidence is limited to the stated purpose of determining Chicago Title's ability to service new customers." *Id.* This Court recognizes that the parties had ample time and opportunity to engage in discovery related to pre-breach evidence on the issues of mitigation and whether Plaintiff is a lost volume seller. Consequently, unless the parties *agree* to conduct additional discovery on such pre-breach evidence, no such discovery is permitted. It is likely, however, that post-breach discovery exists that the parties did not have the ability or previous understanding to develop. Accordingly, the Court shall permit additional discovery related to post-breach evidence on mitigation generally and the lost volume seller issue specifically. If Plaintiff provides Defendant notice that it elects

7

to forego asserting that it is a lost-volume seller, then no discovery on this issue is necessary.

**Conclusion.** In summary, the Court concludes that although discovery is not permitted of *already disclosed* information that is neither incomplete nor incorrect, the following constitutes permissible discovery:

> (1) additional relevant financial information related to the issue of compensatory damages, including but not limited to relevant financial statements of parties and related non-parties, dating from 2003 through 2007 (and beyond if damages are asserted for subsequent years), as well as 2002 data if not previously disclosed;
> (2) additional depositions of the experts regarding their opinions, especially in regard to the valuation of the Magnuson book of business, in light of new or additional financial information;
> (3) additional evidence related to whether the Magnuson employment-related non-compete covenant is enforceable beyond the two-year period;
> (4) additional evidence related to proximate cause issues; and
> (5) additional post-breach evidence related to mitigation and post-breach evidence related to the lost volume seller issue (if the latter remains a component of this litigation).

The Court therefore **GRANTS** Defendant's motion to allow additional discovery (Doc. # 264) **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion to limit the scope of discovery (Doc. # 267).

## II. Summary Judgment

### A. Standard Involved

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden

8

of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B. Discussion

Plaintiff moves for summary judgment on Defendant First American's mitigation defense. The motion does not target the lost volume seller issue, which is related to Plaintiff's contract claim against Defendant James Magnuson. Rather, Plaintiff's motion is confined to the tortious interference with contractual relations claim against Defendant First American and whether Plaintiff had a duty to mitigate damages related to that claim.

At trial, Plaintiff moved for judgment as a matter of law on both claims in regard to mitigation. The Court granted that two-pronged motion, holding that as a matter of Ohio law there was no duty to mitigate in the intentional tort claim against First American and that

9

Plaintiff was a lost volume seller in regard to claim against Magnuson. This Court erred in reaching the former conclusion.

Under Ohio law, "there is a duty for one injured by a tort to make reasonable efforts to mitigate his damages." *Hastings v. J.E. Scott Corp.*, No. 2003 CA 32, 2004 WL 759658, at *2 (Ohio Ct. App. Apr. 9, 2004). Plaintiff argues that such a duty does not extend to the intentional tort context, but Plaintiff cannot direct this Court to any Ohio state court case or any federal court case applying Ohio law that follows this limiting view. In contrast, Ohio courts have recognized a duty to mitigate in intentional tort cases. In *Hastings*, for example, the state court of appeals was discussing a claim for the intentional interference with a contract. *Id.* Similarly, a different Ohio court of appeals found a duty to mitigate in another intentional tort case, this one involving a claim for the intentional infliction of emotional distress. That court plainly stated that "[u]nder Ohio law, a person who is tortiously injured has a duty to exercise reasonable care to avoid incurring further injury." *Giglio v. Doherty*, 55 Ohio App.3d 59, 61, 562 N.E.2d 513, 515 (Ohio Ct. App. 1988). Such unqualified application of the duty to mitigate in intentional tort cases presents a clear statement of Ohio law by Ohio state courts, which in the absence of an Ohio Supreme Court decision can guide this Court.

Plaintiff urges this Court to reject that this is the law in Ohio. The company argues that a plurality if not majority of courts that have addressed the issue have found that there is no duty to mitigate damages when an intentional tort is involved. None of these are Ohio courts. Plaintiff also argues that Ohio's legislative branch has repeatedly evinced a policy favoring the imposition of full liability on intentional tortfeasors. Policy that appears to animate specific statutory decisions does not invariably control all aspects of common law claims and duties,

however, and in cases such as *Hastings* and *Giglio*, Ohio's courts have not recognized the broad policy influence Plaintiff asserts.[2]  Moreover, although Plaintiff attacks the statements of the law and the consequent application of a duty to mitigate in the Ohio court cases on the grounds that those courts did not perform a full analysis on the precise extant issue, this argument assigns to these state courts a failure to appreciate what they were holding.  Although these courts may have cited to negligence cases to support their broad statement of the law in Ohio regarding mitigation and torts, their doing so points to an apparent lack of distinction as to how the duty to mitigate should be applied in varied contexts.  This Court declines to attribute to Ohio's courts the degree of carelessness that Plaintiff's position would assign them.

In light of the foregoing, the Court must recognize its prior error and therefore **DENY** Plaintiff's motion for summary judgment on Defendant First American's mitigation of damages defense.  (Doc. # 265.)  Without expressing any opinion as to the merits, the Court recognizes that the mitigation defense remains available to that defendant.

### III.  Conclusion

This Court **GRANTS** Defendant First American's Motion to Allow Additional Discovery (Doc. # 264), **GRANTS IN PART** and **DENIES IN PART** Plaintiff Chicago Title

---

[2]  Plaintiff also fails to direct this Court to Ohio cases related to the specific Restatement (Second) of Torts approach to mitigation in the intentional tort context that Plaintiff argues would apply if some duty to mitigate exists in Ohio law.  The company states that "if the Court determines that the Restatement formulation for mitigation applies, Chicago Title requests leave to file a motion for partial summary judgment, based on the entire record, on First American's mitigation defense under this reduced standard."  (Doc. # 266, at 9.)  There is no basis to conclude based on the current briefing that this aspect of the Restatement applies in Ohio, but this issue and the request for filing a related additional motion are best reserved for discussion at the status conference that will follow today's decision.

Insurance Company's Motion to Limit the Scope of Discovery on Remand (Doc. # 267), and **DENIES** Plaintiff Chicago Title Insurance Company's Motion for Partial Summary Judgment regarding First American Title Insurance Company's Mitigation of Damages Defense (Doc. # 265). In order to set the remainder of the case schedule, including discovery deadlines, the Court schedules a telephone status conference for October 16, 2009, at 11:15 a.m. Plaintiff shall initiate the call. Although the parties may voluntarily agree to commence discovery prior to the conference, they are not required to do so.

    **IT IS SO ORDERED.**

       /s/ Gregory L. Frost
       GREGORY L. FROST
       UNITED STATES DISTRICT JUDGE